Good morning. May it please the Court, my name is Ryan McBride and I represent the appellant Tecklink. I'd like to reserve three minutes for rebuttal. Mr. McBride, if you don't mind moving the microphone just a little closer. Okay, sure. This is a diversity action for breach of contract. The case arises from an agreement between the parties by which my client, Tecklink, was given the exclusive right to sell certain nuclear equipment owned by the defendant, Grays Harbor, on a commission basis. The dispute is whether the agreement required Grays Harbor to provide so-called nuclear documentation to go with that nuclear equipment. Tecklink claimed that that was part of the agreement and the defendant, Grays Harbor, claimed that it was not. The case was tried to a jury and it resulted in a verdict for the defendant. Tecklink's appeal presents two separate sets of issues. The first relates to a summary judgment ruling by the district court, which prevented Tecklink from presenting a lost profits theory of damages to the jury. The second relates to several instructional issues with regard to the jury instructions going to issues of contract interpretation and contract integration or the parole evidence rule. At bottom, both issues relate to the same question in our mind, and that is, was Tecklink given the opportunity to present its theory of the case to the jury? The answer to that question is no. And the district court's rulings on summary judgment, as well as its instructional errors, are prejudicial and entitle Tecklink to a new trial on remand. I'm going to turn first to the summary judgment ruling. I think it's important to understand that the court granted the defendant's motion for summary judgment on the lost profits damages claim that Tecklink had alleged. But in so doing, the court proposed that Tecklink be entitled to present a different theory of damages to the jury, and that's what happened, that this new theory of damages was something that Judge Bryan developed and the parties have sort of labeled it as a lost opportunity theory of damages. Counsel, under our law, was there adequate evidence to go to trial on the lost profits? You have to have some certainty in a lot of things that are required, and I think the district court just thought that there was no adequate evidence of it. That was the basis of the district court's ruling, Your Honor, and he found that we had not met the standard on summary judgment to take a lost profits claim to the jury. The ruling was an oral ruling. In that oral ruling, the judge's reasoning, I think, was encapsulated by his statement, and I quote, that Tecklink, quote, had not proved any particular amount of lost profits. But under Washington state law, Tecklink was not required on summary judgment or at trial to prove a particular amount of lost profits. That's not the standard. Under Washington law, there's a two-step inquiry for lost profits. One, did the plaintiff prove the fact of damage to a reasonable certainty? And if that standard is met, two, did the plaintiff produce some evidence to afford the jury a reasonable basis to estimate the quantum of harm? And that second standard is lower because that reflects the axiom that in a lost profit case, the defendant bears the burden of uncertainty with respect to the quantum of damages. What did you present in terms of proof that there were lost profits? Well, again, going back to the two-step inquiry, first the fact of damages. There was significant evidence in the record regarding the negotiations between Tecklink and Grace Harbor on one side of the negotiations and a third party out of Arizona, APS. I believe it was a public entity, but I'm not quite sure about that. But APS is what they're referred to. Those negotiations had progressed to the point where APS had come to inspect the equipment at issue. They brought seven people to do that. And they specifically communicated, Your Honor, and I think this is the key point, they specifically communicated to both Tecklink and Grace Harbor that they were prepared to make an offer. But they didn't make an offer. They did not make an offer, Your Honor. That's what the district court seized on, really. That's correct. And the reason, Your Honor, that they did not make an offer was because Grace Harbor could not locate the nuclear documentation. Right. But the district court was focusing on lost profits, and that's what bothered the district court. And he said you can get some other damages, but you can't prove lost profits on an offer that wasn't made. So what's wrong with that analysis? First of all, I think that – I mean, let's present a damage case. To present a lost profits damages case, we had to get over the threshold of proving, at least for purposes of summary judgment, sufficient facts that would enable the jury to find with reasonable certainty that we were damaged. And then once we make that threshold, we are entitled to demonstrate a reasonable basis for the jury to calculate how much we were damaged. By focusing on whether or not there was a specific offer made, as Judge Bryan did, he was holding TechLink to a standard of reasonable certainty as to the amount of damage, not the fact of damage. And I think, Your Honor, I think sort of the point that brings this all to a head is the very fact that Judge Bryan allowed a damages theory to go to the jury, I think, establishes that there was necessarily a genuine issue of fact as to whether or not damages were suffered. And then the issue was how do you calculate those damages under the theory – Well, what was the difference between the damages as calculated under your lost profits theory and the damages that you presented at trial? I wish I could answer that succinctly, and I've read the instruction, I've read the law with respect to this theory that Judge Bryan required TechLink to take to the jury, this lost opportunity theory, and it's very complicated. It hasn't been used in the state as far as we could tell in the briefing, indicated in some 50 or 60 years. It required the jury to put a percentage on the likelihood that a deal would have been done and then put a number on the deal and then to extrapolate using those variables an award figure. I mean, to my way of thinking, that was a better theory for you. Well, it was better than losing on Sunday judgment. I'll give you that. Because to show lost profits, you had to show – I mean, I think his thinking was, maybe I'm misinterpreting, is that you were going to lose on your contract theory because there was no offer, but he was throwing you a different theory that you had a greater probability of success on, which was a lost opportunity, which didn't require you to have a firm opportunity, but could show a chance of an opportunity. But let me fast forward to my real question, which is, isn't the measure of damage the same? I don't think the measure of damage would be the same. But if you lose the opportunity and you're damaged and you would have received money, isn't the measure of damage the same? Well, I think under this formula that is required under this lost opportunity thing, the jury could have determined that there was about a 10% chance that – So your argument is the discount – Then there would have been a discount or something to that effect. But on the other theory, you have to show 100% chance and you'd be entitled to it. No, no. You have to show that there was a deal and there were lost profits. At trial, we would have to prove by a preponderance at trial that we were damaged, and then we would have to give the jury sufficient facts for it to come up with the quantum of those damages based upon a reasonable estimate. On summary judgment, our burden was to put forward triable issues of fact on both those things, and I believe we did so. And again, I go back to the point. Judge Bryan focused on the fact that we could not, quote, proved any particular amount of lost profits. That's not the standard. The standard is whether or not we created a genuine issue of fact on whether we were damaged and whether there was sufficient evidence that would have entitled a jury, had we gotten to that stage on that theory, to estimate the lost profits. Now, I think all this kind of goes to the harmless error argument that defendants have raised. They're only rebuttal to this argument on appeal, and that is, well, the jury found in favor of defendant, and thus, you know, what's the big deal? There was no harm, even if the summary judgment ruling was wrong. And I don't think that's the proper analysis because the general verdict form that was used simply said, quote, we, the jury, find in favor of the defendant. So it was entirely possible that the jury found that TechLink had proven liability but then rejected this, how I would characterize, obscure damages theory and awarded no damages. Counsel, I think you'd better get on to your complaints about the instructions. You've only got four and a half minutes. I think I better, Your Honor, and I can't do that. Thank you. Turning then to the issue of the jury instructions, of course, it's the law on this circuit as it is. Most places that a court is entitled to have an instruction about its theory of the case, if it's supported by law and has a foundation in the evidence. TechLink's theory in this case was that Grays Harbor had an obligation to provide these nuclear documents along with the equipment. Since that obligation was not expressly defined in the party's written contract, TechLink's theory turned on its ability to use extrinsic evidence in two different ways. First, the extrinsic evidence was relevant to assist the jury interpret. But he allowed you to put in the extrinsic evidence. He allowed us to put in the extrinsic evidence. He didn't argue about it. He did, but he did not give the instruction that was required by Washington law. Under Washington law, this deviates from the common law. Anyone who practices in Washington learns this pretty darn quick, is that Washington has a fairly strange rule of contract interpretation. It was defined in the Supreme Court's case called Berg v. Hughesman, and it's called the context rule. Berg is an old case, and I know it's been applied a lot. But I read Judge Bryan's order on this, and I think it made a certain amount of sense, which was he said, I'm going to present all this to the jury. I'll let you argue to the jury on the integration theory, which ties in, I think, to this argument. Maybe I'm mixing your arguments up a bit, but I think what he was saying is if it's a question of law applied to undisputed facts, it's a question for the court. If it's an intent question, I'm going to send it to the jury. And then if they find, then getting to your second point, if they find integration, the context rule falls either way, so I'm not going to instruct on it. I mean, that's what I interpreted, what he did. Well, let's put the integration rule. Put it this way. If he found against you on integration as a matter of law, you've been in a different spot now, too. We would not, Your Honor, with respect to the court's failure to give an instruction on contract interpretation, Washington law is extremely clear on this point, that whether or not the contract is integrated, whether or not the parole evidence rule applies, whether or not the contract is ambiguous, parties in Washington get to use and point to extrinsic evidence to help the jury ascertain the party's intent and understand the meaning of the contract. The instruction that the court gave on the parole evidence. Does that apply even if the contract is unambiguous? Yes, Your Honor. That is Washington law. And again, it deviates from the common law. Now, under. . . Let's put on the evidence. And what's your argument on the instruction is that he told them not to ignore the evidence. Is that right? He gave the instruction on the parole evidence rule. And what was the exact evidence you put in that you're complaining about now? That was the trade and usage of the term. There was evidence from the negotiations leading up to the written agreement. And there was a document, but most of them were oral representations. And there was also a course of dealing, I guess it would be called, after the contract was signed that we argued establishes that the parties always intended the written contract, especially when it said nuclear equipment, to naturally require the corresponding nuclear documentation. It's not nuclear equipment. It's not worth what it's worth as nuclear equipment without the corresponding documentation. And by only instructing the jury on the parole evidence rule, whether that was right or not, we contend it was wrong. But even if you accept that that was not error, Your Honors, it entitled the jury that followed that instruction and concluded that the contract was fully integrated, then the jury, following those instructions as it should have, was required to ignore all of TechLink's extrinsic evidence. That's not the law in Washington. Even if the contract is fully integrated, the jury must consider the extrinsic evidence for purposes of ascertaining the party's intent and to give meaning to the words on the contract. That is different from supplementing the contract through parole evidence, and they are totally different theories under Washington law. I'll reserve my time. Yeah, you've exhausted your time, but we'll give you a couple minutes for rebuttal. Okay, thank you. Thank you, Your Honor. May it please the court, my name is Donald Cohen, and I represent the Grays Harbor Public Development Authority. I'm pleased to be before this court today, including Judge Conlon from the Northern District of Illinois, where I practiced in the early 1970s, so I welcome you also. Would you mind starting with the last point on the instructional error? I'd be glad to. That's how I had my, even though in time it was different, it's sort of, I think of duty and damages and so forth. So let's talk about the contract. There's no dispute, and I think Your Honor's recognized that, that all the evidence on these issues, the extrinsic evidence that counsel referred to went to the jury, as well as the contract terms themselves, as is, where is, no warranties, that kind of stuff. The first thing that, well, let me just cut to Berg v. Hudisman, because I think that's the real crux of this. They also claim that Judge Bryan should have decided the contract interpretation issue, and the cases are all bench trials and so forth. But Berg v. Hudisman, Judge Bryan, as you know, is an experienced trial judge. He's careful with his instructions. He felt that giving that instruction would add confusion, not clarity, and would invite the jury to speculate. He said that on the record. And I think this is why, because he had heard the case. He formulated the full set of instructions. And if you look at the instructions as a whole, here's what he did. He started out with standard instructions, 1, 2, 3, 9, 10, and 16, that said, Jury, you consider all the evidence, make your decision on these things, regardless of who puts it in, regardless of the type, direct, circumstantial, testimony, documents. And then he went further, and I think this is the key to this point. He gave instructions 11, 12, and 13. 12 and 13 weren't even requested by either party. These instructions were on what's a contract, what's a promise, what is mutual assent. And number 12, and number 12 is at the excerpt of record 194, said, a promise, he specifically instructed this, a promise may be expressed orally, in writing, by conduct, or any combination of those. Pretty close to Berg v. Hudisman. TechLink Counsel emphasized that very instruction in closing argument to the jury. And he also gave, by the way, supplemental instruction A, which had been requested by the jury from the jury room, on breach of contract. So they obviously had gotten to the point of discussing duty and breach, contrary to TechLink's argument in their briefing, that they just never really understood enough to even think about these things. But if you look, if you take the instructions as a whole and look at them together, and this is what Brewer v. City of Napa, 210F3rd at 1097 says in the Ninth Circuit, if you take the instructions as a whole, they were fair, they covered the subject, and Judge Bryan's decision not to use that specific Berg v. Hudisman instruction was not error  Look, I think part of the question is, did his, did the instructions preclude the jury from considering this context evidence, in your opinion? Well, we don't I mean, if you apply the instruction as he gave it, one might draw that conclusion. I think, Your Honor, that this is where you have to look at the totality of all the instructions. We don't just pick and choose and look and focus on specific things, because he specifically, in these other instructions, instructed the jury that they were to consider everything, including oral promises, including conduct, the very things that Berg v. Hudisman did. And they were there discussing and deliberating about oral promise, about duty, breach, and so forth. So I think the answer is that it did not preclude them, and in fact, there was no requirement that he give that specific formulation of Berg v. Hudisman, and in fact, he gave, if you want, the functional equivalent of it. And when you look at the totality of all the instructions, there is no error under the Ninth Circuit precedent that I mentioned. Would you concede that if he had not given any other instructions, that this instruction would have been an error? Well, I think it would have been a closer call, but as Your Honor mentioned earlier, and Judge Fletcher also, everything went to the jury, and the speculation that the jury just wasn't able to think through these things is belied by that supplemental instruction A that the jury requested. So would it have been a closer question? Yeah, I think it probably would have been a closer question, but it wasn't, because there were all these instructions, not just the standard ones, but the other ones, 11, 12, and 13, that I mentioned that I think if there was a Berg problem, it was cured, and any error would have been harmless because he did instruct the jury to consider all of those issues. What's the wording of the instruction where he said don't consider anything but the terms of the contract? Pardon me, Your Honor? What's the wording of the instruction that's in question? The wording was if you, this is number 14, if you find that all the provisions of the agreement are contained in a single written document and the document was intended by the parties as their final agreement on the subject's addressment, then you may not consider evidence outside the written document. And then he goes on to continue with if you find it is not integrated. And then in our view, if you add in all the other instructions, including the ones that were repeated by TechLink Counsel in closing argument, it gave the jury the opportunity to consider all this evidence. There was days of it. You've read it, and 80% of it is extrinsic evidence. But if you looked at it, that after they looked at all this other evidence, they found that everything was within the contract, then you're not supposed to go outside. Well, I think the answer, though, maybe I haven't made my point clear, is that they did have all the opportunity. My point is that they may have used this opportunity to make a determination. Yeah, we've looked at all this other stuff, but the guts is the contract and its terms. And that's where we settle. Therefore, we can't consider this other stuff for that purpose. That's an argument. I understand that. The rejection of an instruction is subject to an abuse of discretion standard. The failure to give a specific instruction is not error when the instructions taken as a whole fairly cover the subject. And that was this Brewer v. City of Napa case that I mentioned a minute ago. I'm saying it's not the failure to give the context instruction, but the specific instruction to stick to the terms of the contract. Yeah, again, there was no ‑‑ I mean, TechLink didn't object to that first paragraph of that instruction. They did take exception to not giving a Berg v. Hudesman instruction. But again, I'll submit, Your Honor, that with all the instructions and an abuse of discretion standard, I think that it falls well within affirming the jury's verdict on that issue. Maybe I should jump ahead to the damages issues. Obviously, if you agree on duty with the PDA, you don't have to get to the damages question. But once the PDA moved for summary judgment on damages under Rule 56, TechLink had the burden to come forward with admissible evidence in response to it. Their core evidence was testimony, hearsay, speculation by Mr. Kemp. This is on summary judgment now. And there was no testimony from Arizona Public Service offered by TechLink on summary judgment. The part that wasn't speculation or hearsay was Mr. Kemp of TechLink's own admission that nobody from APS, Arizona Public Service, ever told him that the deal didn't go through because of lack of documentation. So, but even if there was some error in Judge Bryan not permitting lost profits damages to go to the jury, the questions that Judge Thomas and Judge Fletcher asked earlier, I agree with. The very same evidence went to the jury. And you don't have to believe me, TechLink's own counsel admitted it was going to be the exact same evidence. This is at the September 21, 07 hearing at pages 18 and 19. They admitted it when the lost opportunity damages issue came up. There was a question about is it going to take more discovery? Is it going to delay things? And counsel for TechLink twice said, no, it's the same basic evidence. That was confirmed at trial when Mr. Kemp of TechLink said that in his opinion, the probability of the sale going through was 100 percent. Full commission, same as lost profits. And then TechLink argued that very point to the jury. So, whether it was lost profits or lost opportunity damages, the same evidence got in, and the jury heard all that. Maybe the most important in some ways that the jury heard at the jury stage was the APS testimony of Mr. Meyer that hadn't come out before the summary judgment stage. And you've read some of the briefing on this, probably read his testimony. It was offered by deposition. He said there were serious problems here with this alloy that had suffered corrosion and failures in other plants. He said, most importantly, there were three levels of decision making at Arizona Public Service, and that APS senior management had severe reluctance to even consider using these old pieces of equipment, even if they had the documentation, his words. That was at his deposition at 126, 127. That, you can imagine, was devastating testimony for TechLink, directly contrary to the speculative testimony by TechLink, and it validated the summary judgment decision on damages that Judge Bryan had made initially. I want to mention just a couple of things while it's out of order here, but I have a few minutes left, and I'd like to just mention a few things that were not briefed specifically. This gets back away from damages now. On the issue about whether Judge Bryan himself should have decided the contract integration issue, all the cases that we all cite are bench cases. I mentioned that previously. We did not cite a case earlier called Dick's Steel, 74 Washington 2nd at 119, which says contract interpretation, party's intent, it can be judge or jury. Again, another bench case, just like the Barber v. Rochester case that TechLink cites over and over again, and what Barber doesn't say, and I think this is one of... It's sort of an odd rule saying if it's a bench trial, you ought to determine in advance of the bench trial, too. I mean, it really doesn't matter if you have fact-finding. Well, yeah, I guess from a... I mean, the rule to me, and it is a Washington rule, doesn't make entire sense to me, but it says generally that the judge ought to do it pre-trial. Now, I think Judge Bryan made a distinction on bench trials. I'm not sure it's a fair distinction because you still have a fact-finder, but maybe my interpretation of what he was doing was saying, look, if they're undisputed facts, then it's an issue of law and I ought to do it pre-trial, and if it's an issue of fact or intent, it ought to go to the fact-finder. That's not exactly what the rule says, though. He talks about intent and doing it pre-trial, but that's what I thought he was doing. But I think your struggle with that is because you know what Rule 56 says. Rule 56 says if you determine there's a genuine issue of material fact, then whether it's on integration or something else, that goes to the... Amendment. That goes to the... Contract integration. Contract integration, right. That goes to the finder of fact, and here the finder of fact was the jury. There's no authority prohibiting a judge in a jury trial from doing exactly what Judge Bryan did here. I think that's the main point. Here you kind of get down to the one thing I believe that we agree with, TechLink, and that the question is fundamentally whether there was a fair opportunity of TechLink to be able to present its evidence and argue its case, and I think the answer to that is yes. Were there some things that maybe one would have liked a little better, a little worse, or so forth? You've seen, you know the citations better than I do, that you're entitled to a fair determination. You may not be entitled to a perfect one, and in this particular case, we have a situation where even Judge Bryan gave every chance to TechLink. His rulings on summary judgment enabled TechLink to put on all the evidence we've talked about. His ruling denying the PDA's motion to dismiss at the close of the evidence gave them another shot because he actually gave it to the jury, even though, his own words, he thought the liability theory was tenuous and thin, and their damages theory was extraordinarily thin, but he let it go to the jury anyway. When Judge Bryan denied the motion for a new trial, he determined, and you don't have to accept this at face value, but you've read the record, he determined that TechLink had had a fair opportunity overall, fair instructions, that the jury apparently did not believe the testimony of Mr. Kemp of TechLink, and that there was no miscarriage of justice. To reverse this decision means another week-long trial with the same evidence and the same result. Grace Harbor Public Development Authority respectfully requests that this Court affirm the jury's verdict. Thank you, Counselor. Thank you. We'll give you two minutes for rebuttal. I think I'll just focus on the contract interpretation instruction issue, and I want to bring out one thing that I did not have an opportunity to mention before, and that is that in discussing the proposed jury instruction, both parties proposed to Judge Bryan an instruction based on Berg that they took largely verbatim right out of the Washington Pattern jury instructions, and I think it's interesting to note that the Washington Pattern jury instructions include an instruction on Berg separate from an instruction about contract integration. At the end of the day, in looking at all the instructions which Counsel has urged the Court to do, there was a single instruction that had anything to do with TechLink's extrinsic evidence. I would submit that instruction 12 does not have to do with this issue of integration or interpretation. The one instruction was on the parole evidence rule, which we've discussed. That instruction entitled the jury, if it found the agreement to be fully integrated, to ignore all of TechLink's extrinsic evidence. Defense Counsel took that instruction and ran with it. In its closing argument to the jury, Counsel argued, quote, unless you have it in writing, you don't have a contract. And, of course, that argument was reinforced by the absence of any instruction on the issue of contract interpretation. Now, did Counsel for TechLink point to instruction 12? Not sure. What else could he have pointed to to urge the jury to consider that extrinsic evidence? Taken in combination or in isolation, the jury instructions did not adequately, fairly, and completely instruct this jury on that critical component of Washington law. That component is that they are entitled to, and indeed they should, consider extrinsic evidence to ascertain the parties' intent. We don't know if the jury followed Judge Bryan's instructions and ignored that evidence or not. And for that reason, it was prejudicial error that requires a new trial. Thank you, Your Honors. Thank you both for your arguments. The case has certainly been an interesting case and your arguments today have been very helpful. Thank you. We'll be in recess for the morning. All rise.
judges: B. Fletcher, Thomas, Cjj Conlon (N. Ill.), Dj